IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| James R. Wood, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-1036 (RDA/WEF) |
| | ) | |
| J. Brown, DDS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

James R. Wood ("Plaintiff"), a Virginia inmate proceeding *pro se*, filed a civil action, pursuant to 42 U.S.C. § 1983, alleging in Count 1 of his Complaint that Defendant J. Brown, DDS ("Brown"), violated his Eighth Amendment right to adequate and timely dental care (dental prosthodontics).[1] The alleged violation occurred while Plaintiff was detained in the Virginia Department of Corrections ("VDOC") at the Deerfield Correctional Center ("DCC"), Capron, Virginia. Dkt. 1.[2] Specifically, Plaintiff alleges that Brown was deliberately indifferent to his

> serious medical/dental needs and necessary teeth cleaning, dental prosthetics, a crown for [his] tooth so that [he] would not be forced to have it surgically removed which caused him physical, mental, and emotional suffering in violation of [his] Eighth Amendment rights by not providing not providing proper, timely, or

---

[1] "Prosthodontics is a branch of dentistry dedicated to making replacements for missing or damaged teeth. Common prosthodontic treatments include dentures, dental implants, crowns and bridges." *Cleveland Clinic, Prosthodontics,* https://my.clevelandclinic.org/health/treatments/23904-prosthodontics (last viewed Mar. 3, 2026). Plaintiff also uses the term "partials" to refer to prosthodontics.

[2] Plaintiff also sued Defendant L. Shaw ("Shaw"), Americans with Disabilities Act ("ADA") Coordinator alleging in Count 2 of his Complaint that Shaw was deliberately indifferent to Plaintiff's serious medical/dental needs by not ensuring that Plaintiff, as a reasonable accommodation, received his "dental prosthetics in a proper, timely, or adequate manner" and "by not notifying executive management" that Plaintiff was being denied the dental prosthetics by "medical staff," as required by the ADA. Dkt. 1 at 17, 18. On February 3, 2026, after reviewing Plaintiff's responses to Shaw's motion to dismiss, the Court granted the motion to dismiss. Dkts. 55, 56.

adequate medical/dental care or services that comport with Federal and State laws as well as VADOC policies, in a manner appropriate with a licensed medical practitioner who provided direct medical/dental services to [Plaintiff].

Dkt. 1 at 16-17.[3]

On June 12, 2025, Brown filed a motion for summary judgment ("MSJ"), with a brief in support, exhibits and affidavits. Dkt. 27, 28. The Court advised Plaintiff in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Dkt. 31, and he responded to the MSJ by filing a response (Dkt. 40) as well as several motions. The Court addressed Plaintiff's motions on February 3, 2026, and denied Plaintiff's motions for Emergency Injunction Relief (preliminary injunction), Discovery, Continuance, and a motion to Supplement Evidence. Dkts. 37, 38, 41, 42, 56. The Order also denied Plaintiff's motion for Appointment of Counsel (Dkts. 39, 56) without prejudice. In addition, the Order granted Plaintiff leave to file a proper "Rule 56(d) affidavit within fourteen (14) days," and warned him that if he failed to do so, the Court would resolve the MSJ "based upon the current record." Dkt. 57. Plaintiff has not filed a Rule 56(d) affidavit, the MSJ is ripe, and after reviewing the MSJ and related pleadings, the MSJ must be granted.

## I. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). As the Fourth

---

[3] Plaintiff's Complaint further alleges that Brown "is sued in her individual capacity for her actions that amount to deliberate indifference to [Plaintiff]'s serious dental problems for not providing proper, timely or adequate dental care or services which caused [Plaintiff] to suffer needlessly." *Id.* at 9. Under the heading "Eighth Amendment Violations," Plaintiff discusses Brown's alleged deliberate indifference and states Brown "will be found liable for an Eighth Amendment violation and liable for damages that her actions caused [Plaintiff]." *Id.* at 15-16.

2

Circuit has noted, summary judgment allows courts "to avoid useless trials where material facts are not disputed and the law points unerringly to the conclusion that one of the parties is entitled to judgment as a matter of law," *Utility Control Corp. v. Prince William Constr. Co.*, 558 F.2d 716, 719 (4th Cir. 1977), and allows courts "to avoid a useless trial" and "make[s] possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts." *Bland v. Norfolk & S.R. Co.*, 406 F.2d 863, 866 (4th Cir. 1969).

"[It] is true that the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-249 (1986) (citation omitted). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Brown, pursuant to Federal Rule of Civil Procedure 56, filed his statement of undisputed material facts. Plaintiff, however, has failed to comply with his obligations under Rule 56 by submitting statements of undisputed and disputed facts.[4] *See Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) ("The responsibility to comb through the record in search of facts relevant to summary judgment falls on the parties—not the court."); *Malina v. Baltimore Gas &*

---

[4] In his response to the MSJ, Plaintiff alleges that Brown's Undisputed Statement of Facts are "fundamentally illegal" because Brown relied on VDOC Operating Procedure 720.6 ("OP 720.6") in making treatment decisions with respect to the dental care she provided Plaintiff. Dkt. 40 at 3-5. Numbers 4 through 8 set forth pertinent portions of OP 720.6 but Plaintiff does not dispute that or allege Brown has misstated the portions of OP 720.6 he set out in his MSJ. Instead, Plaintiff's response raises a new claim based upon his assertion that OP 720.6 is "illegal," which is addressed below. *See, infra* at 11-12.

3

*Elec. Co.*, 18 F. Supp.2d 596, 604 (D. Md. 1998) ("[I]t is the responsibility of the plaintiff, not the court, to identify with particularity the evidentiary facts existing in the record which can oppose the defendant's summary judgment motion. The court . . . is not required to independently comb the record to look for them."); *see also Amnesty America v. Town of West Hartford*, 288 F.3d 467, 470-71 (2d Cir. 2002) ("Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute . . . . Nothing in the federal rules mandates that district courts conduct an exhaustive search of the entire record before ruling on a motion for summary judgment . . . .").

Accordingly, Plaintiff has failed to rebut any of the facts set forth by Brown, *Gholson v. Murray*, 953 F. Supp. 709, 714 (E.D. Va. 1997), and the Court accepts Brown's statement of facts as true. *See Integrated Direct Mktg., LLC v. May*, 129 F. Supp. 3d 336, 345 (E.D. Va. 2015) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine facts in opposition to the motion.") (quoting E.D. Va. Loc. Civ. R. 56(B)), *aff'd*, 690 F. App'x 822 (4th Cir. 2017); *see also JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 705, 707 (E.D. Va. 2007) (movant's statement of undisputed facts is deemed admitted where nonmovant's response fails to "identify with any specificity which facts, if any, were disputed") (citing E.D. Va. Loc. Civ. R. 56(B)).[5]

## II. Undisputed Statement of Facts

1.    At all relevant times, Brown was a dentist employed by the VDOC at the DCC. Dkt. 1 at ¶ 1.

---

[5] The summary judgment record of admissible evidence includes the affidavits and unobjected to documents submitted in support of the MSJ. Dkts. 28-1, 28-2, and 28-3.

4

2.    Brown treated Plaintiff from January 3, 2024, through June 12, 2024. *Id.* at ¶ 2.

3.    At all relevant times, Plaintiff was in VDOC custody at DCC. Dkt. 1 at 4.

4.    VDOC Operating Procedure 720.6 ("OP 720.6"), effective September 1, 2022, identifies "temporary crowns and restoration" and complete and partial dentures as Class 2, requiring "routine dental treatment" and having a moderate priority level. Dkt. 28-2 at 6-7.[6]

5.    OP 720.6 (V)(D)(4)(a) provides for "certain levels of care," identifying care that is "Not Dentally Mandatory" to include "such treatment as dental implants, fixed bridges, permanent crowns, cast-metal partial dentures, orthodontics . . . ." *Id.* at 9.

6.    OP 720.6(V)(D)(4)(b) states that the VDOC "does not provide the not dentally mandatory level of care." *Id.* at 9.

7.    OP 720.6(V)(G)(1) provides, with regard to "Restorative Dentistry," that "[p]ermanent restorations (amalgam and resin) will be placed when possible." *Id.* at 10.

8.    OP 720.6(V)(J)(1) provides with regard to prosthodontic treatment that "removable and/or transitional dentures will be made when the diagnosing Dentist determines that there is an insufficient number of teeth remaining for mastication; defined as fewer than six points of occlusal contact." *Id.* at 11.

9.    On January 24, 2024, Plaintiff requested a dental consultation for a lost filling. Dkt. 28-3 at 2.

10.    On January 25, 2024, Brown placed a temporary filling on Plaintiff's tooth #3, provided pain medication, and referred him for an extraction. Dkt. 28-1 at ¶ 4; 28-3 at 3, 4.

---

[6] OP 720.6 states its purpose as follows: "This operating procedure provides guidance for the provision of adequate, necessary, and cost[-]effective dental care to inmates and Community Corrections Alternative Program (CCAP) probationers/parolees in Department of Corrections (DOC) facilities." *Id.* at 4.

11. On February 1, 2024, Plaintiff requested a dental consultation because the temporary filing had come out. *Id.* at 5.

12. On February 7, 2024, Brown saw Plaintiff regarding partial dentures and informed him that per OP 720.6, he did not meet the requirement for partial dentures. Under the policy, a patient must have a certain number of teeth missing and six contact points. Plaintiff was not a candidate because the only missing teeth he had were as follows: his wisdom teeth; number three, number four, number five, number 19. The rest of his teeth were intact. Brown also replaced the temporary filling on tooth #3. Dkt. 28-1 at ¶ 5; 28-3 at 7.

13. On February 16, 2024, Plaintiff requested a root canal and crown on tooth #3. Brown again reviewed OP 720.6 and informed him that posterior root canals are discouraged as they generally require permanent crowns which are not offered by the VDOC. Plaintiff signed a refusal for the extraction of tooth #3. Dkt. 28-1 at ¶ 6; 28-3 at 8, 9.

14. On February 28, 2024, Plaintiff presented and said that he wanted tooth #3 extracted. He also complained to Brown of sensitivity to hot and cold on tooth #18. Brown informed Plaintiff that he was bruxing and encouraged him to purchase a night guard in hopes that tooth #18 (which an exam and x-ray showed had a large filling proximal to the nerve) would be salvageable. She also prescribed pain management and explained that the abuse of pain medication can damage vital organs. Dkt. 28-1 at ¶ 7; 28-3 at 10-12.

15. On March 8, 2024, Plaintiff's tooth #3 was extracted. Dkt. 28-3 at 13.

16. On March 21, 2024, Plaintiff presented for a post-surgery appointment with Brown after the extraction of tooth #3. He was healing within normal limits. However, noting Plaintiff's poor oral hygiene, Brown still recommended wearing a night guard and stressed oral hygiene practices as he has poor oral hygiene and stated that he only brushed once per day. Dkts. 28-1 at ¶ 8; 28-3 at 14-15.

6

17.    On April 19, 2024, Plaintiff presented for a treatment plan complaining about tooth #18, as it was temperature sensitive and causing jaw and ear pain. Brown discussed his poor oral hygiene again and noted decay on tooth #13. Dkts. 28-1 at ¶ 9; 28-3 at 16.

18.    On June 5, 2024, Plaintiff presented with a chief complaint of pain in tooth #18. Brown referred Plaintiff for an extraction of tooth #18 and prescribed pain medication. Dkts. 28-1 at ¶ 10; 28-3 at 17-19.

19.    On June 12, 2024, Plaintiff presented for restoration of tooth #13 and was again educated on the abuse of pain medication. Dkts. 28-1 at ¶ 11; 28-3 at 20.

20.    On July 25, 2024, Plaintiff refused transportation for the extraction of tooth #18. Dkt. 28-1 at ¶ 12.

21.    On September 9, 2024, Plaintiff presented for cleaning by the dental hygienist and she documented poor oral hygiene. Dkts. 28-1 at ¶ 13; 28-3 at 21.

### III. Analysis

Brown's MSJ argues that she was not deliberately indifferent to Plaintiff's dental needs and requests that judgment be entered in her favor. Plaintiff argues that Brown was deliberately indifferent to his "serious medical/dental needs," and disagrees with Brown's treatment decisions. Based on the summary judgment record, Brown was not deliberately indifferent to Plaintiff's dental needs. Plaintiff's response to the MSJ, however, raises two new claims that he did not raise in his complaint. First, he argues that OP 720.6 is "illegal" stating that it does not bear a "rational relationship" to a legitimate governmental interest. Dkt. 40 at 8 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Second, Plaintiff resurrects his dismissed ADA claim against Shaw, alleging Brown violated the ADA. As noted in the February 3, 2026, Memorandum and Order, the ADA claim had no merit as a matter of law, Dkt. 55 at 10-11, and now alleges that Brown violated the

ADA arguing that Brown violated the ADA by not providing him with dental prosthodontics and a crown in lieu of an extraction.

To the extent Plaintiff seeks to amend his Complaint by raising new matters, he may not do so via a response to a motion. *See Hurst v. District of Columbia*, 681 F. App'x 186, 194 (4th Cir. 2017) ("a plaintiff may not amend [his] complaint via briefing") (citing *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)); *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (a plaintiff is "bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint."), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *see Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) ("To the extent Bridgeport seeks to expand its claims to assert new theories, it may not do so in response to summary judgment or on appeal.").[7] Based on the summary judgment record, Brown was not deliberately indifferent in her treatment of Plaintiff and his dental needs. Further, the arguments in Plaintiff's response have no merit.

### A.    Deliberate Indifference

"A prison official's deliberate indifference to an inmate's serious medical needs" violates the Eighth Amendment. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). A deliberate indifference claim has an objective and a subjective component. First, the objective component, requires that the plaintiff's "medical condition . . . be serious—one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

---

[7] Although the Court denied the broad discovery motion Plaintiff filed in this matter, the Court provided Plaintiff an opportunity to file a proper Rule 56(d) affidavit. Dkt. 57 at 3-4. The MSJ provided Plaintiff with a number of documents and as noted in denying Plaintiff's motion for discovery, Plaintiff had filed a response to the MSJ without additional discovery. His failure to pursue discovery via a proper Rule 56(d) affidavit indicates that Plaintiff did not need additional discovery. To be sure, he was provided fourteen days, and it has now been more than a month, and he has not filed a Rule 56(d) affidavit.

8

recognize the necessity for a doctor's attention." *Id.* Second, the subjective component, requires showing that Defendant "had actual subjective knowledge of both the [plaintiff's] serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* In addition, prison officials are entitled to rely on the opinions, judgment, and expertise of medical personnel. *See Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (finding non-medical prison personnel may "upon their health care providers' expertise").

For a prisoner to state a constitutional claim for denial of medical or dental care, he must demonstrate that a defendant's acts or omissions amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). As the Fourth Circuit has held, "[t]o establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851 (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (7th Cir. 1986) (cases collected)).

Further, the Constitution entitles an inmate only to those procedures that are medically necessary and does not entitle them to procedures that are merely desirable. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam) ("Questions of medical judgment are not subject to judicial review."). *Bowring* "disavow[ed] any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment. The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion." *Id.* at 48. The Fourth Circuit reaffirmed this portion of *Bowring* in *United States v. Clawson*, 650 F.3d 530 (4th Cir. 2011), and further enhanced and fortified *Bowring*'s holding that courts would not intervene when there was a difference in opinion by referencing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985), which held that "[d]isagreements between an inmate and a

9

physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim for purposes of 42 U.S.C. § 1983, and noting that "[o]ther circuits ha[d] reached similar conclusions." 650 F.3d at 538 (citations omitted).[8] To be sure, the Fourth Circuit has "consistently have found such disagreements to fall short of showing deliberate indifference. *Jackson*, 775 F.3d at 178 (citing *Wright*, 766 F.2d at 849; *Clawson*, 650 F.3d at 538).

Here, the undisputed facts establish that Brown saw Plaintiff on at least nine occasions between January 25, 2024, and July 25, 2024—approximately six months—and that Plaintiff had one tooth extracted by an oral surgeon on March 8, 2024 and had his teeth cleaned by an oral hygienist on September 9, 2024, about six weeks after his last consultation on July 25, 2024 when Plaintiff refused to be transported for the recommended extraction of tooth #18. *See, supra* at 5-7. In sum, Brown saw Plaintiff repeatedly about his teeth, treated him in accordance with OP 720.6, and ignored her advice and warnings about his poor oral hygiene and the night guard, as well as her advice about the extraction of tooth #18. Brown clearly did not ignore Plaintiff or his dental needs. Further, Plaintiff's desire for a root canal and a crown (prosthodontic treatment)

---

[8] The Fourth Circuit recently reaffirmed *Wright*'s holding that "'[d]isagreements between an inmate and a physician over the inmate's proper medical care" do not cut it . . . and evidence that might show 'medical malpractice' is not necessarily sufficient. *Jackson* [*v. Lightsey*], 775 F.3d [170,] 178 [(4th Cir. 2014)]. Instead, '[o]nce prison officials are aware of a serious medical need, they need only to respond reasonably to the risk.' *Hixson*[*v. Moran*], 1 F.4th [297,] 302 [(4th Cir. 2021)] (quotation marks and brackets removed)." *Phoenix v. Amonette*, 95 F.4th 852, 859 (4th Cir. 2024). To be sure

> [d]eliberate indifference is "more than mere negligence," but "less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." [*Farmer*, 511 U.S.] at 835. It "lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (citing *Farmer*, 511 U.S. at 835). Under this standard, mere "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not actionable absent exceptional circumstances. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

*Scinto v. Stansberry*, 841 F.3d 219, 225-26 (4th Cir. 2016).

instead of extraction is no more than disagreement with Brown's treatment decisions. *See James v. Pa. Dep't of Corr.*, 230 F. App'x 195, 197-98 (3d Cir. 2007) (affirming that there was no Eighth Amendment claim for an extraction that was within the Pennsylvania Department of Corrections' policy of providing for extractions and not root canals; and the inmate's "allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his dental care.") (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)), *cert. denied*, 552 U.S. 1067 (2007); *see also Mathews v. Raemisch*, 513 F. App'x 605, 606-07 (7th Cir. 2013) (affirming summary judgment on inmate's claim of deliberate indifference to his infected tooth where the prison refused to provide him with a root canal procedure but did offer extraction because the "dispute is over nothing but the choice of one routine medical procedure versus another"); *see also Brathwaite v. Corr. Med. Servs.*, 630 F. Supp. 2d 413, 417 (D. Del. 2009) (concluding that there was no Eighth Amendment violation where a prisoner was offered extraction only and denied the root canal that he requested).[9] Based on the summary judgment record, Brown was not deliberately indifferent to Plaintiff's dental/medical needs.

---

[9] A similar complaint by a Virginia inmate for a denture (prosthodontic), after a tooth was removed, found no deliberate indifference under the mastication standard of OP 720.6 and granted the dentist's motion for summary judgment.

> Although Perry may have wanted a bridge or single-tooth denture, Dr. McMoore "determined that [Operating Procedure 720.6] did not permit" such a procedure "because it constituted prosthodontic treatment that was not necessary for mastication or to restore function." Perry fails to direct the Court to any evidence demonstrating Dr. McMoore subjectively recognized that, by refusing to provide an unnecessary bridge or denture to Perry, he acted inappropriately in light of the risk of harm created by the absence of Perry's molar. No reasonable juror could perceive that, under these facts, Dr. McMoore's actions constituted deliberate indifference. . . .

> At the core of Claim One, Perry "simply disagrees with the medical judgment" of Dr. McMoore concerning the propriety of dentures or a bridge.

*Perry v. Johnson*, No. 3:10cv630, 2012 WL 5423755, at *5 (E.D. Va. Nov. 6, 2012) (citations and footnotes omitted).

11

Plaintiff's desire to have a different treatment option is no more than his disagreement with the treatment option chosen by Brown.

### B. OP 720.6 and ADA

In his Complaint, although Plaintiff alleged that Shaw violated the ADA, he made no such allegation against Brown,[10] Dkt. 1 at 16-18; and further, contrary to Plaintiff's argument that OP 720.6 I "illegal," OP 720.6's policy of extraction in lieu of a root canal or other more expensive treatment for tooth decay does not violate the Eighth Amendment.[11] Plaintiff's argument to the contrary is simply "a disagreement over the proper course of his treatment and thus failed to allege

---

[10] The specific allegations in the Complaint that reference Brown, *supra* at 1, reference the Eighth Amendment, which is the only "Federal law" Plaintiff mentions in his allegations against Brown.

[11] The Fourth Circuit affirmed a district court's decision that found that offering an inmate an extraction instead of a root canal did not violate the Eighth Amendment. The South Carolina Department of Corrections ("SCDC") dental treatment policy did "not provide endodontic canal therapy, crowns, and bridges," and the dentist "offered the plaintiff a course of treatment, tooth extraction, which the plaintiff has refused." *Koon v. Ubah*, 2008 WL 724041, at *7 (D.S.C. Mar. 17, 2008), *aff'd*, 280 F. App'x 255 (4th Cir. 2008);

> Although treatment of the plaintiff's tooth with a root canal may be more desirable to the plaintiff than an extraction, denying the plaintiff his preferred treatment does not constitute an Eighth Amendment violation. *James v. Pa. Dept of Corr.*, 230 F. App'x 195 (3d Cir. 2007) (holding no deliberate indifference where inmate was denied a root canal and his tooth was extracted); *McQueen v. Karr*, 2002 WL 31688891 (5th Cir. 2002) (finding no Eighth Amendment violation where prisoner argued he was entitled to restorative dental care instead of tooth extraction); *Del Muro v. Fed'l Bureau of Prisons*, 2004 WL 1542216 (N.D. Tex. July 8, 2004) (finding no Eight Amendment violation where prisoner argued he was entitled to crowns and/or a bridge rather than tooth extraction).

*Koon*, 2008 WL 724041, at *7. *See e.g.*, *Baughman v. Garcia*, 254 F. Supp. 3d 848, 877-78 (S.D. Tex. 2017), *aff'd sub nom. Baughman v. Seale*, 761 F. App'x 371 (5th Cir. 2019) ("offering extraction in lieu of a root canal or other more expensive treatment for tooth decay does not violate the Eighth Amendment if extraction is medically appropriate and will resolve the issue.") (collecting cases); *see also McQueen v. Carter*, 54 F. App'x 406 (5th Cir. 2002) (per curiam) (table case), 2002 WL 31688891, at *1 (inmate's "dissatisfaction with the treatment offered him, extraction of his injured teeth versus more expensive restorative treatment, [was] insufficient to state a claim under § 1983. [Inmate] has no right to the treatment of his choice.").

a reckless disregard with respect to his dental care." *James*, 230 F. App'x at 197-98; *see also Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("But the question whether an X-ray–or additional diagnostic techniques or forms of treatment–is indicated is a classic example of a matter for medical judgment.").

Further, as noted, Plaintiff made no allegation that OP 720.6 was "illegal" or that OP 720.6 was unconstitutional in his Complaint. Indeed, his Complaint asserts that Brown's response to Plaintiff's Written Complaint—"that per 720.6 crowns are not provided as a treatment option," Dkt. 2 at 39, 47—incorrectly interpreted OP 720.6. The Complaint alleges that "an investigation into 720.6V.K.1.," by the administrators would have revealed that Brown incorrectly interpreted OP 720.6. Dkt. 1 at 15. Plaintiff's Complaint did not pursue a theory that OP 720.6 was illegal and instead argued that Brown had not complied with it.[12]

As to Plaintiff's ADA claim against Brown in his response, is nothing more than an attempt to convert his Eighth Amendment based upon Brown's medical decision into a failure to provide a reasonable accommodation claim.[13]  The ADA, however, does not provide a remedy for

---

[12] Moreover, Plaintiff's argument omits much. OP 720.6 sets forth the circumstances in which root canal may be performed. OP 720.6(V)(K)(1) states that "Root canals may be performed on anterior teeth with no more than one surface of caries and predictably restorable with direct filling procedures. Posterior root canals are discouraged. Data shows that posterior endodontics generally require permanent crown therapy," OP 720.6 continues stating that "[a]n inmate with multiple carious teeth, advanced periodontal disease, and/*or generalized poor oral hygiene*, is not a candidate for root canal therapy," and "[t]he tooth in question must be restorable *with filling material* and it should be functional." OP 720.6(V)(K)(2)-(3). Lastly, OP 720.6 leaves"[i]n all cases, the decision to perform root canal treatment . . . with the diagnosing Dentist. OP 720.6(V)(K)(4). Here, the summary judgment record reveals several reasons why a root canal was not appropriate. First, Plaintiff wanted a crown, not a filling, and the policy only provides for a filling. Second, it is undisputed that Plaintiff had poor oral hygiene and that he repeated refused to purchase a night guard to diminish his bruxing. Further, permanent crowns are classified as "Not Dentally Mandatory," and are not provided. OP 720.6(V)(D)(4).

[13] OP 720.6 sets forth several requirements related to prosthodontics. Prosthodontic treatment (removable and/or transitional dentures) require that "the diagnosing Dentist determines that there is an insufficient number of teeth remaining for mastication; defined as fewer than six

"inadequate treatment for disability." *Simmons v. Navajo Cty.*, 609 F.3d 1011, 1021-22 (9th Cir. 2010) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he [ADA] would not be violated by a prisons simply failing to attend to the medical needs of its disabled prisoners . . . . The ADA does not create a remedy for medical malpractice.")); *see also Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("[P]urely medical decisions . . . do not ordinarily fall within the scope of the ADA or the Rehabilitation Act."); *Baxley v. Jividen*, 508 F. Supp. 3d 28, 62 (S.D. W. Va. 2020) ("the ADA cannot be used to assert a claim of inadequate medical care[.]") (citation omitted).[14]

### IV. CONCLUSION

For the reasons outlined above, Defendant Brown's motion for summary judgment, Dkt. 27 will be granted, through an Order that will be issued alongside this Memorandum Opinion.

Entered this ___18___ day of ___March___ 2026.

Alexandria, Virginia

_____/s/_____
Rossie D. Alston, Jr.
United States District Judge

---

points of occlusal contact." VDOC OP 720.6 (V)(J)(1) Availability of Dental Services and Levels of Care, Prosthodontic Treatment. There is nothing in the record that indicates Plaintiff is not capable of mastication.

[14] *See, e.g., Goodman v. Johnson*, 524 F. App'x 887, 890 (4th Cir. 2013) (affirming dismissal of ADA claim that alleged prison's refusal to provide inmate contact lenses, instead of glasses, to correct his impaired vision, as inmate failed to indicate that, due to his disability, he had been deprived of benefits for which he was otherwise qualified); *Miller v. Hinton*, 288 F. App'x 901, 902-03 (4th Cir. 2008) (ruling that prison's alleged denial to prisoner of access to colostomy bags and catheters did not violate the ADA absent a showing that inmate was treated in that manner because of his disability).

14